IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIEL T. PAULY, as Personal Representative,
of the ESTATE OF SAMUEL PAULY, deceased,
and DANIEL B. PAULY, Individually,

Plaintiffs,

v.                                                                              No. 1:12-cv-01311-WJ-LFG

STATE OF NEW MEXICO
DEPARTMENT OF PUBLIC SAFETY;
GORDON E. EDEN, JR. in his capacity as
Secretary of the New Mexico Department
Of Public Safety, RAY WHITE;
MICHAEL MARISCAL; KEVIN TRUESDALE,
And ROBERT SCHILLING, in his capacity as Chief
of the New Mexico State Police

Defendants.

## SECOND AMENDED COMPLAINT FOR DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS, WRONGFUL DEATH AND COMMON LAW TORTS

COMES NOW Plaintiffs  Daniel T. Pauly and Daniel B. Pauly, by and through their counsel of record, O'Friel & Levy, P.C., by Lee R. Hunt, Esq., and brings the following causes of action against Defendants:

## INTRODUCTION

1. This Complaint alleges federal civil rights and state negligence claims arising out of deliberate and conscious failure to follow well established police practices leading to the tragic killing of Samuel Pauly on October 4, 2011.

2.  On October 4, 2011, the New Mexico 911 operator received a call claiming that a vehicle

was driving recklessly.  During the 15 minute 911 call, the first words spoken by the caller are her telling the driver to "stay on his ass".

3.  The vehicle that was being tailgated by the 911 caller was driven by Daniel B. Pauly.

4.  The caller informed the 911 operator that the vehicle was exiting and the 911 operator instructed her to follow the vehicle off the exit.  The caller complied and followed the vehicle up the exit.

5.  Officers Michael Mariscal, Ray White and Kevin Truesdale arrived at the Glorieta exit to investigate the incident.  After talking to the 911 caller, the officers concluded that there was not enough information to make an arrest.

6.  Despite determining that there was not probable cause to make an arrest, the officers continued to an address that had been given by the 911 operator.

7.  Daniel B. Pauly and Samuel Pauly lived in a house that was behind the main property of the address received by the police.  The Pauly home was set back from the street and was shielded from the street by buildings and trees.

8.  Inside the residence, Samuel Pauly was playing video games.  Sam had worked that night as a waiter at Geronimo in Santa Fe.  Around 11:00 p.m., his brother Daniel came home and told him that a car had been tailgating him and followed him off the exit at Glorieta.

9.  Shortly after the discussion about the tailgating vehicle, Daniel and Samuel saw flashlights and feared that intruders were approaching the home.  Daniel feared that the intruders were the same people that had followed him off the exit ramp at Glorieta.

10.  The flash lights outside belonged to the New Mexico State Police (NMDPS).  The police had parked at the bottom of the drive and the police units were completely hidden from the view inside the Pauly house.  The police lights were not used to alert the Pauly brothers that

police were in the area.

11.   When Officers Mariscal, Truesdale and White got near the home, they began yelling at the Pauly brothers.  They were yelling expletives and informed the brothers that the house was surrounded and that they better come out, or they were coming in.

12.   The police approached the home under the cover of darkness, without speakers, without visible police lights and without clearly announcing that they were State Police.

13.   By acting in this manner, the police created a dangerous situation.  The Pauly brothers were terrified and did not know that the intruders were the police.

14.   Because of his and Sam's fear, Daniel went to the back of the house and informed the intruders that they had guns and fired two warning shots into the air.  As he fired the gun, he said "We have guns. Get out of here."

15.   Samuel was in the front of the house, behind a window in the living room.

16.   At this moment, Officer Ray White was 60 feet away from the house, he was protected behind a rock wall and he had time to think about what was happening and how to respond.

17.   Officer White did not announce that it was the state police, he did not yell for anyone to drop their weapons, he did not give any indication that he was about to fire at the people that were standing inside the home.

18.   In a calculated manner, Officer White aimed his weapon, put his gun sight on the person standing inside the house and fired his weapon.

19.   When Officer White chose to remain quiet, chose not to instruct the people in the home that he was the State Police, chose not return to his vehicle and request support and, instead, chose to respond to a warning shot in the air with a kill shot on a person standing in his living room 60 feet away, Officer White deliberately and intentionally killed Sam Pauly.

3

20.  Officer White's actions were unlawful and unreasonable because Officer White was under no imminent threat of danger and neither were any other officers.

21.  At the time that he was gunned down, Samuel Pauly presented no threat of imminent harm to Ray White or the other NMDPS officers.

22.  The decision to shoot and kill Samuel Pauly was in deliberate disregard for Samuel Pauly's constitutional rights and was in deliberate disregard of well-established police policies and procedures.

23.  Had the NMDPS officers been properly trained, they would have clearly alerted the Pauly brothers that they were State Police and would have avoided conduct that raised the danger level in a situation where there was no ongoing crime and no immediate threat.  The incident that the police were investigating was over.

24.  Instead, after deciding that no arrest was possible, Officers White, Truesdale and Mariscal approached the home in an aggressive manner and in stealth.  The officers created a hostile, dangerous situation by failing to follow appropriate police practices.  They continued to act in violation of police practice by firing upon a person who was standing in his home and did not know that the intruders were police.

25.  The New Mexico State Police further demonstrated intentional and malicious indifference to the value of life when an officer who was assisting in the investigation of Sam's death took a photo of Sam's body on his personal cell phone.  The photo was then distributed to members of the public.

26.  The action of taking a picture of a deceased person that had been killed by the State Police demonstrates that the investigation of Sam's death was unreliable, unprofessional and that the State Police have created a culture that lacks respect for human life and views the

4

body of a person killed by the State Police as nothing more than a curiosity to share with their friends.

27.  As a result of Ray White and the other NMDPS officers' failure to follow established police practices and protocol, Samuel Pauly died on October 4, 2011 at the age of 34.

## PARTIES

28.    Daniel T. Pauly is the personal representative of the Estate of Samuel Pauly.  Daniel T. Pauly is now and at all times material hereto has been a resident of Santa Fe County, New Mexico.  He is the biological father of Samuel Pauly, deceased, and has been duly-appointed as Personal Representative of his estate for purposes of the New Mexico Wrongful Death Act, NMSA 1978, § 41-2-3, Case No. D-101-PB-2011-00213.

29.    Daniel B. Pauly is the brother of Samuel Pauly and was a resident of Santa Fe, County at the time of this incident.

30.    At the time of his death, Samuel was 34 years old and was a resident of Santa Fe County, New Mexico.

31.    The Defendant, State of New Mexico Department of Public Safety, is a government entity organized under the laws of the State of New Mexico.  The State of New Mexico, Department of Public Safety, may sue and be sued.  Jurisdiction and venue are proper in this Court.

32.  GORDON E. EDEN, JR is the Secretary of the Department of Public Safety.  At all relevant times, Eden acted under color of law and within the scope of his duties as NMDPS Cabinet Secretary.  At those times, Eden had decision-making and policy-making authority for the NMDPS in regard to law enforcement matters.  In connection with Plaintiffs' § 1983

claims, EDEN is sued personally and in his official capacity.

33.  Defendant RAY WHITE, at all times material to the allegations of the Complaint was a police officer employed by Defendant STATE OF NEW MEXICO, DEPARTMENT OF PUBLIC SAFETY. For purposes of 42 U.S.C. § 1983, WHITE is sued personally.  Upon information and belief, Officer White had a personal conflict with the owner of the home where the Pauly brothers lived and had been removed from an earlier investigation due to the conflict.

34.  Defendant MICHAEL MARISCAL, at all times material to the allegations of the Complaint was a police officer employed by Defendant STATE OF NEW MEXICO, DEPARTMENT OF PUBLIC SAFETY. For purposes of 42 U.S.C. § 1983, MARISCAL is sued personally.

35.  Defendant KEVIN TRUESDALE, at all times material to the allegations of the Complaint was a police officer employed by Defendant STATE OF NEW MEXICO, DEPARTMENT OF PUBLIC SAFETY. For purposes of 42 U.S.C. § 1983, MARISCAL is sued personally.

36.  Defendant ROBERT SCHILLING, upon information and belief, served as the NMDPS Chief of Police in October 2011.  At those times, Schilling acted under color of law and within the scope of his duties as the NMDPS Chief of Police.  At those times, Schilling was the final decision-maker and policy-maker for the NMDPS in regard to law enforcement matters.  In connection with Plaintiffs' § 1983 claims, Schilling is sued personally and in his official capacity.

## JURISDICTION AND VENUE

37. This Court has original concurrent jurisdiction over Plaintiffs' federal claims and original jurisdiction over Plaintiffs' state common law claims pursuant to Art. VI, §13 of the Constitution of the State of New Mexico.

38. Venue is properly located in this district.

## COUNT ONE

### Deprivation of Civil Rights
### Under 42 U.S.C. § 1983

39. The contents of above paragraphs are incorporated by reference as if set forth in full.

40. Defendants White, Truesdale, and Mariscal were state actors who were, at all relevant times, acting within the course and scope of their employment with the New Mexico Department of Public Safety, the State Police.

41. At all relevant times, Defendants White, Truesdale, and Mariscal were acting under the color of law.

42. Samuel Pauly had a clearly established right under the Fourth Amendment of the Constitution to be free from the excessive use of force by law enforcement officers.

43. Defendants White, Mariscal and Truesdale's decision to storm the Pauly residence and to create a dangerous and hostile situation was unreasonable.

44. When Defendant White shot Sam Pauly, he had no reason to believe that Mr. Pauly posed a threat of serious physical harm to him or anyone else.

45. If at any time, any type of force was necessary the need for force was created by Defendants White, Mariscal and Truesdale's unreasonable conduct.

7

46.  The actions of Defendants White, Mariscal and Truesdale were not justified under clearly established law under the Fourth Amendment to the Constitution and resulted in the deprivation of Sam Pauly's civil rights.

47.  As a direct and proximate result of Defendants White, Mariscal and Truesdale's actions, Sam Pauly suffered wrongful death and damages, including the loss of the value of his life, lost enjoyment of his life, lost earnings and earning capacity, pain and suffering, and lost household services.

48.  Defendants White, Mariscal and Truesdale acted intentionally, maliciously or with reckless indifference and an award of punitive damages is necessary to punish this conduct and prevent this kind of mistreatment of New Mexico citizens in the future.

## COUNT TWO

### NEGLIGENT HIRING, TRAINING, SUPERVISION RESULTING IN WRONGFUL SHOOTING DEATH UNDER THE NEW MEXICO TORT CLAIMS ACT

49.  The contents of above paragraphs are incorporated by reference as if set forth in full.

50.  NMDPS, Gordon Eden, Jr. as Cabinet Secretary and Robert Schilling, as Chief of Police were personally responsible for hiring, training, supervising, disciplining and firing its police officers.

51.  NMDPS and Robert Schilling had a duty to create, implement and enforce policies and procedures which:

   a.  ensured that citizen safety should be the department's first priority;

   b.  ensured officers received adequate training in proper techniques for announcing their presence, entering someone's property, diffusing rather than creating difficult situations, and responding to someone who asks that the police leave the property;

   c.  ensured officers did not use deadly force when other means were available;

d. ensured officers removed themselves from potentially dangerous situations without resorting to deadly force.

e. made sure officers used recording devices such as tape belts to record citizen encounters; and

f. ensured the investigation of police shootings would result in obtaining the true facts rather than allowing a cover up.

g. ensured that officers treated New Mexico citizens with respect and dignity.

52. NMDPS and Robert Schilling had a duty to train and supervise its NMDPS officers

regarding these policies.

53. NMDPS and Robert Schilling had a duty to supervise and fire officers who exhibited a

tendency toward violence.

54. NMDPS and Robert Schilling had a duty to make sure that officers did not respond to scenes

where the officer had a personal conflict with people that lived at the residence.

55. NMDPS and Robert Schilling negligently or recklessly did one or more of the following:

a. Chose not to create or enforce adequate written policies regarding police encounters with citizens in their own homes;

b. Chose to create policies and procedures that permitted officers too much discretion in the use of deadly force and that actually condoned the use of deadly force;

c. Chose to hire officers whose violent and hostile tendencies presented an unreasonable risk to citizens and other police officers;

d. Chose to allow officers not to comply with the requirement that encounters with citizens be recorded by belt tape recorders.

e. Chose not to create or enforce adequate written policies regarding police taking pictures of deceased people and distributing such photos to the public.

56. As a direct and proximate result of NMDPS and Robert Schilling's reckless or negligent acts

or omissions, Sam Pauly was killed by Officer White, resulting in his wrongful death and

damages, including the loss of the value of his life, lost enjoyment of his life, lost earnings and

earning capacity, pain and suffering, lost household services and aggravating circumstances.

## COUNT THREE

### BATTERY RESULTING IN WRONGFUL SHOOTING DEATH
### UNDER NEW MEXICO TORT CLAIMS ACT

57.  The contents of above paragraphs are incorporated by reference as if set forth in full.

58.  NMDPS is a governmental entity and local public body.

59.  At all times pertinent hereto, Ray White, Michael Mariscal, and Kevin Truesdale were

public employees.

60.  At all times pertinent hereto, Officers White, Mariscal and Truesdale were acting in their

capacity as public employees and law enforcement officers for NMDPS.

61.  On October 4-5, 2011, Officers White, Mariscal and Truesdale committed a battery on Sam

Pauly by shooting him and causing his wrongful death.

62.  Defendant NMDPS is responsible for the conduct of Officers White, Mariscal and

Truesdale, who recklessly, negligently and without justification shot and killed Sam Pauly.

63.  The decision of NMDPS officers to shoot and kill Samuel Pauly was a direct and proximate

cause of Samuel Pauly's wrongful death and damages, including the loss of the value of his life

and the enjoyment of his life, lost earnings and earning capacity, pain and suffering, lost

household services and aggravating circumstances.

## COUNT FOUR

**VIOLATION OF CONSTITUTIONAL RIGHT TO BE FREE FROM UNREASONABLE SEIZURE RESULTING IN WRONGFUL SHOOTING DEATH**

64.  The contents of above paragraphs are incorporated by reference as if set forth in full.

65.  The New Mexico Constitution guarantees its citizens the right to be free from unreasonable seizures.  N.M. Const. art. II, § 10.

66.  NMDPS acted unreasonably and without justification when, through its law enforcement officers and employees, it shot Samuel Pauly, while he was standing inside his home and killed him.

67.  NMDPS's violation of Samuel Pauly's right to be free from unreasonable seizures and unjustified shooting was a direct and proximate cause of Samuel Pauly's wrongful death and damages, including the loss of the value of his life and the enjoyment of his life, lost earnings and earning capacity.

## COUNT FIVE

**LOSS OF CONSORTIUM ON BEHALF OF DANIEL B. PAULY**

68.  The contents of above paragraphs are incorporated by reference as if set forth in full.

69.  Daniel B. Pauly and Samuel Pauly were brothers.  Additionally, they were extremely close in all respects.

70.  Dan and Sam worked together, lived together, had formed a common life together and were mutually dependent upon one another in day to day living.

71.  Dan depended on his brother for guidance and support in more than a normal sibling relationship.

72.  Dan and Sam planned to continue working together and to eventually open a restaurant together.

73.  They also depended upon each other for even the small things, like groceries, household items, care for their joint pets and other common everyday tasks.

74.  It was foreseeable that harm to Sam Pauly would inflict harm upon Daniel B. Pauly.

75.  Due to the death of Sam Pauly, Daniel B. Pauly suffered loss of companionship, society, comfort, aid, and protection.

## DAMAGES

76.    The contents of paragraphs above are incorporated hereinto by reference as if set forth in full.

77.    As a direct and proximate result of the conduct of Defendants, described above, the Estate of Samuel Pauly, as represented by its personal representative, is entitled to recover damages against Defendants as follows:

A.    Samuel Pauly endured intense physical pain and suffering and suffered cruel dying moments.  Therefore, the Estate of Samuel Pauly is entitled to recover damages in an amount to be determined at the trial of this cause.

B.    The Estate of Samuel Pauly has lost the present worth of Sam's life, including his enjoyment of life, having regard to the aggravating circumstances attending the wrongful and unlawful acts which resulted in his death, as provided for and as amplified under federal and New Mexico law.  Such damages include damages for the value of the loss of life itself, as well as economic damages, including impairment to lifetime earning capacity and loss of household services.  Therefore, the Estate of Samuel Pauly is entitled to recover damages in an amount to be determined at the trial of this cause.

C.    The Estate of Samuel Pauly has incurred reasonable and necessary expenses

for his funeral and burial, and is entitled to recover special damages therefor.

        D.      Because the conduct of Defendants involved intentional misconduct, recklessness, gross negligence, willfulness and/or callous indifference, and/or because Defendants' conduct was motivated by malice, evil motive or intent, the Estate of Samuel Pauly is entitled to recover a separate award of punitive and exemplary damages against each Defendant.

        E.      Daniel B. Pauly has lost the companionship, society, comfort, aid, and protection of losing Samuel Pauly and should recover such loss of consortium damages.

        WHEREFORE, Plaintiffs request the following relief against Defendants:

        A.      Awards of compensatory damages as set forth above;

        B.      Awards of punitive damages as set forth above;

        C.      An award of pre- and post-judgment interest on any amounts recovered herein;

        D.      Their costs of action herein, including attorneys' fees pursuant to 42 U.S.C. §1988 on their §1983 claims; and

        E.      Such other and further relief as the Court may deem appropriate under the circumstances.

Respectfully submitted,

Attorneys for Plaintiff
O'FRIEL & LEVY, P.C.

By:_____/s/Lee R. Hunt_____
    Lee R. Hunt, Esq.
    Pierre Levy, Esq.
    P. O. Box 2084
    Santa Fe, NM 87504-2084
    lee@ofrielandlevy.com
    pierre@ofrielandlevy.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on June 28, 2013, I filed the foregoing electronically through The United States District Court for the District of New Mexico, which caused the following parties or counsel to be served by electronic means, as per the Notice of Electronic Filing and/or via U.S. Mail:

    Mark Jarmie, Esq.
    Matthew D. Bullock, Esq.
    JARMIE & ASSOCIATES
    P. O. Box 26416
    Albuquerque, NM 87125-6416
    mjarmie@jarmielaw.com
    mbullock@jarmielaw.com

_____/s/Lee R. Hunt _____
Lee R. Hunt