IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DANIEL T. PAULY, as Personal Representative
of the ESTATE OF SAMUEL PAULY, deceased,
and DANIEL B. PAULY, Individually,

      Plaintiffs,

vs.                                                                                  Civ. No. 12-1311 KG/WPL

STATE OF NEW MEXICO
DEPARTMENT OF PUBLIC SAFETY,
RAY WHITE, MICHAEL MARISCAL, and
KEVIN TRUESDALE,

      Defendants.

MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant Kevin Truesdale's First Motion for Summary Judgment and Memorandum in Support Thereof (Officer Truesdale's Motion for Summary Judgment), filed November 13, 2013.  (Doc. 90).  Defendant Kevin Truesdale (Officer Truesdale) moves for summary judgment on the 42 U.S.C. § 1983 claim, the New Mexico Tort Claims Act (NMTCA) claim, and the New Mexico State Constitution claim.  In addition, Officer Truesdale raises a qualified immunity defense with respect to the Section 1983 claim.  Plaintiffs filed a response to Officer Truesdale's Motion for Summary Judgment on December 23, 2013, and Officer Truesdale filed a reply on January 24, 2014.  (Docs. 113 and 128).

This matter also comes before the Court upon Defendant Michael Mariscal's First Motion for Summary Judgment and Memorandum in Support Thereof (Officer Mariscal's Motion for Summary Judgment), filed November 13, 2013.  (Doc. 91).  Like Officer Truesdale, Defendant Michael Mariscal (Officer Mariscal) moves for summary judgment on the Section 1983 claim,

the NMTCA claim, and the New Mexico State Constitution claim. Moreover, Officer Mariscal raises a qualified immunity defense with respect to the Section 1983 claim. Plaintiffs filed a response to Officer Mariscal's Motion for Summary Judgment on December 23, 2013, and Officer Mariscal filed a reply on January 24, 2014. (Docs. 110 and 130).

Having reviewed Officer Truesdale's Motion for Summary Judgment, Officer Mariscal's Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court denies both motions for summary judgment for the following reasons.

A. *The Second Amended Complaint for Damages for Deprivation of Civil Rights, Wrongful Death and Common Law Torts (Doc. 46)*

This wrongful death lawsuit arises from an incident in which Defendant Ray White, a New Mexico State Police Officer, shot and killed Samuel Pauly at the house he shared with his brother, Plaintiff Daniel B. Pauly (Daniel Pauly). Daniel Pauly was at the house at the time of the shooting. In addition, Officers Mariscal and Truesdale, also New Mexico State Police Officers, were at the brothers' house when the shooting occurred.

Plaintiffs' lawsuit is based on Section 1983, the NMTCA, and the New Mexico State Constitution. In Count One, Plaintiffs bring a Section 1983 claim against Officers White, Truesdale, and Mariscal for allegedly violating Samuel Pauly's Fourth Amendment right to be free from excessive force.[1] In Count Three, Plaintiffs bring an NMTCA battery claim against Officers White, Truesdale, and Mariscal, and a corresponding NMTCA *respondeat superior* claim against Defendant State of New Mexico Department of Public Safety (NMDPS). In Count Four, Plaintiffs contend that the NMDPS violated article II, section 10 of the New Mexico State

---

[1] The parties stipulated to dismissing Count Two. (Doc. 117).

Constitution through Officers White, Truesdale, and Mariscal's alleged unreasonable seizure of Samuel Pauly.  Finally, Plaintiffs bring a loss of consortium claim in Count Five.

B.  *Summary Judgment Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.  P. 56(a).[2] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Bacchus Indus., Inc.*, 939 F.2d at 891.

Summary judgment motions involving a qualified immunity defense are determined somewhat differently than other summary judgment motions. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995). "When a defendant raises the qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict two-part test." *Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).  This is a heavy burden for the plaintiff. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th

---

[2]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

Cir. 1995)). First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the "right was clearly established such that a reasonable person in the defendant's position would have known that his conduct violated that right." *Maestas v. Lujan*, 351 F.3d 1001, 1007 (10th Cir. 2003). The Tenth Circuit Court of Appeals instructs that

> [i]f the plaintiff does not satisfy either portion of the two-pronged test, the Court must grant the defendant qualified immunity. If the plaintiff indeed demonstrates that the official violated a clearly established constitutional or statutory right, then the burden shifts back to the defendant, who must prove that "no genuine issues of material fact" exist and that the defendant "is entitled to judgment as a matter of law." In the end, therefore, the defendant still bears the normal summary judgment burden of showing that no material facts remain in dispute that would defeat the qualified immunity defense. When the record shows an unresolved dispute of historical fact relevant to this immunity analysis, a motion for summary judgment based on qualified immunity should be "properly denied."

*Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002) (citations omitted).

*C. Material Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiffs*

In determining the material facts and reasonable inferences to be viewed in the light most favorable to Plaintiffs, the Court reviewed Officer Truesdale's Statement of Undisputed Material Facts, Officer Mariscal's Statement of Undisputed Material Facts, Plaintiffs' Additional Statement of Material Facts,[3] the parties' responses to the statements of undisputed material facts, and the evidence of record. Unless otherwise noted, the following recitation of material facts and reasonable references reflects the Plaintiffs' version of the facts as gleaned from the evidence of record and excludes facts, contested or otherwise, which are not properly before this Court in the motions for summary judgment.

---

[3] Plaintiffs' Additional Statement of Material Facts is found in Plaintiffs' Opposition to Defendant Raymond White's First Motion for Summary Judgment. (Doc. 111) at 14-25.

4

On the evening of October 4, 2011, Daniel Pauly and two females became involved in a road rage incident on the interstate highway going north from Santa Fe, New Mexico towards Las Vegas, New Mexico. (Doc. 82-1) at 6 (depo. at 121). One of the females called 911 and reported a "drunk driver" who was "swerving all crazy" and turning his Toyota pickup truck's lights off and on. (Doc. 82-1) at 23. After Daniel Pauly passed the females, they apparently tailgated Daniel Pauly. (Doc. 82-1) at 5 (depo. at 117-120).

Daniel Pauly, therefore, stopped at the Glorieta off-ramp as did the females who were following him. (Doc. 82-1) at 9 (depo. at 133). Daniel Pauly asked the females why they were following him and why they had the car's brights on. *Id*. One of the females reported that Daniel Pauly was "throwing up gang signs" during this encounter. (Doc. 82-1) at 24. Daniel Pauly, however, felt personally threatened by the females' driving behavior. (Doc. 82-1) at 9 (depo. at 134). Daniel Pauly then drove a short distance from the off-ramp to his house where his brother, Samuel Pauly, was playing a video game on the couch.[4] (Doc. 82-1) at 10 (depo. at 145). The house is located in a wooded rural area to the rear of another house on a hill. (Doc. 82-1) at 21.

The New Mexico State Police dispatcher contacted Officer Truesdale between 9:00 p.m. and 10:00 p.m. that evening regarding the 911 call from the females. (Doc. 82-3) at 3. Officer Truesdale arrived at the Glorieta off-ramp to speak to the two females after Daniel Pauly had driven to his house. *See id*. Officers White and Mariscal were *en route* to provide Officer

---

[4] Officers Truesdale and Mariscal note that Samuel Pauly had smoked marijuana and drank half a beer that evening. (Doc. 87-1) at 2 (depo. at 101); (Doc. 87-1) at 5 (depo. at 148). Officers Truesdale and Mariscal also note that Daniel Pauly drank two beers at a club in Albuquerque and drank half a beer at the house. (Doc. 87-1) at 5-6 (depo. at 148-49). The Court will not consider this evidence in deciding the Motion for Summary Judgment because it is irrelevant to the issues now before the Court.

Truesdale with back-up assistance. *Id*. The females informed Officer Truesdale about Daniel Pauly's alleged reckless and dangerous driving. *Id*. The females also described Daniel Pauly's vehicle as a gray Toyota pickup truck and gave dispatch a license plate number. *Id*. The dispatcher informed Officer Truesdale that the Toyota pickup truck was registered to an address on Firehouse Road, Glorieta, New Mexico. *Id*.

Once the two females went on their way, any threat to the females was over. (Doc. 82-2) at 5 (depo. at 208). Officers Mariscal and White subsequently joined Officer Truesdale at the Glorieta off-ramp. Although it was raining, the Officers were not wearing raincoats over their uniforms. (Doc. 82-1) at 13 (depo. at 179); (Doc. 84-3) at 4 (depo. at 134). It was also a dark night.[5] (Doc. 82-3) at 17 (depo. at 100).

Officer Truesdale decided to speak with Daniel Pauly to determine if he was intoxicated, "to make sure nothing else happened," and to get Daniel Pauly's version of the incident. (Doc. 82-2) at 6 (depo. at 218). At that point, the Officers did not believe any exigent circumstances existed. *Id*. at 7 (depo. at 213); (Doc. 82-4) at 9-10 (depo. at 20-21). The Officers also did not have enough evidence or probable cause to make an arrest. (Doc. 82-3) at 5); (Doc. 82-3) at 14 (depo. at 91).

The Officers then determined that Officers Truesdale and Mariscal should go, in separate patrol units, to see if they could locate Daniel Pauly's pickup truck at the Firehouse Road address while Officer White should stay at the off-ramp in case Daniel Pauly came back that way. (Doc. 82-3) at 14 (depo. at 92). Officers Truesdale and Mariscal drove a short distance to the Firehouse Road address and parked their vehicles in front of the main house along the road. *See*

---

[5] Officers White and Truesdale dispute this fact and claim that, despite the rain, the moon was out and they could see fairly well in the dark. (Doc. 84-2) at 5 (depo. at 117); (Doc. 85-2) at 4 (depo. at 227). Officers White and Truesdale do not describe how full the moon was that night.

(Doc. 82-4) at 11 (depo. at 109).  The vehicles had their headlights on and one vehicle had takedown lights on; none of the vehicles had flashing lights on.  (Doc. 82-4) at 11 (depo. at 109-10).  Officers Truesdale and Mariscal did not see Daniel Pauly's pickup truck at the main house.  *See* (Doc. 82-2) at 9 (depo. at 230).

Officers Truesdale and Mariscal, however, saw a porch light and lights on in another house behind the main house, so they decided to walk up to that second house, Daniel and Samuel Pauly's house, to see if Daniel Pauly's pickup truck was there.  (Doc. 82-2) at 9 (depo. at 232); (Doc. 82-3) at 6.  The Officers did not activate any security lights as they walked up to the brothers' house.  (Doc. 82-3) at 18 (depo. at 115).

Officers Truesdale and Mariscal approached the brothers' house in such a way that the brothers did not know that the Officers were there.  (Doc. 82-2) at 12 (depo. at 224).  The Officers chose this kind of approach in an attempt to maintain officer safety.  *Id*. at 14 (depo. at 233).  Officers Truesdale and Mariscal, therefore, did not initially use their flashlights and then used the flashlights periodically.  *Id*. at 13 (depo. at 226); (Doc. 82-3) at 15 (depo. at 101).  After Officer Truesdale got close to the front of the house and began approaching the front door, he turned his flashlight on.  (Doc. 85-3) at 3 (depo. at 249-50, 252).  The Officers could see through the front window two males moving back and forth in the house.  (Doc. 88-3) at 1 (depo. at 152).  As the Officers got closer to the second house, they also saw Daniel Pauly's pickup truck and advised Officer White that they located the pickup truck.  (Doc. 82-5) at 12.  Officer White then proceeded to the Firehouse Road address.  *Id.*

At around 11:00 p.m., the brothers saw through the front window two blue LED flashlights, five or seven feet apart at chest level, coming towards the house.  (Doc. 82-1) at 11 (depo. at 170-71); (Doc. 82-3) at 4.  Daniel Pauly could not see who held the flashlights,

7

especially with the rain coming in sideways. (Doc. 82-1) at 11 (depo. at 171); (Doc. 87-2) at 3 (depo. at 208). Daniel Pauly thought the figures were intruders possibly related to the road rage incident; it did not enter Daniel Pauly's mind that the figures could have been police officers. (Doc. 82-1) at 11-12 (depo. at 171, 173); (Doc. 87-2) at 4 (depo. at 220). Both brothers then yelled out several times, "Who are you?" and, "What do you want?" (Doc. 82-1) at 13 (depo. at 179-80). In response to those inquiries, the brothers heard a laugh and, "Hey, (expletive), we got you surrounded. Come out or we're coming in."[6] *Id*. at 13 (depo. at 180). Moreover, Officer Truesdale yelled out once, "Open the door, State Police, open the door." (Doc. 87-2) at 2 (depo. at 185-86); Truesdale Coban recording, Supp. #19. Daniel Pauly, however, did not hear anyone call out "State Police" until after Officer White shot Samuel Pauly.[7] (Doc. 82-1) at 14 (depo. at 181). Officer Mariscal also announced, "Open the door, open the door." (Doc. 82-3) at 5.

Daniel Pauly felt scared and that his life, his brother's life, and the lives of their dogs were being threatened by unknown people outside the house. (Doc. 82-1) at 16 (depo. at 205); (Doc. 82-1) at 17 (depo. at 222). The brothers then decided to call the police. (Doc. 82-1) at 17 (depo. at 222). Before they could do so, Daniel Pauly heard, "We're coming in. We're coming in." *Id*.

---

[6] The Officers did not actually intend to go inside; they were trying to get the brothers to come out of the house. (Doc. 82-4) at 2 (depo. at 162).

[7] The Officers dispute that Daniel Pauly did not know that State Police Officers were outside the house until after Officer White shot Samuel Pauly. The Officers claim that they shouted out "State Police" numerous times throughout the incident. *See, e.g.,* (Doc. 82-3) at 5-8. Officer Mariscal also claims that that he illuminated himself with a flashlight and that "the individuals" in the house shined flashlights in the direction of himself and Officer Truesdale. *Id.* at 7-8. However, Officer Truesdale, Officer White, and Daniel Pauly did not testify to seeing Officer Mariscal shine a flashlight on himself nor did Daniel Pauly testify to using a flashlight. *See* (Doc. 84-3) at 2 (depo. at 127).

At that point, Samuel Pauly retrieved a shotgun and box of shells for Daniel Pauly so that the brothers could get ready for a home invasion. *Id*. at 17 (depo. at 222-23).  Samuel Pauly also obtained a loaded handgun.  (Doc. 82-3) at 4.  Daniel Pauly then stated to Samuel Pauly that he was going to fire a couple of warning shots.  (Doc. 82-1) at 17 (depo. at 223).  Samuel Pauly went back to the front room.  *Id.*  Next, one of the brothers yelled out from inside of the house, "We have guns."  (Doc. 85-4) at 2 (depo. 276).  Officers Mariscal and Truesdale subsequently saw someone, presumably Daniel Pauly, run towards the back of the house.  (Doc. 82-2) at 23 (depo. at 272).  Officer Truesdale, therefore, went to the far back corner of the house to see what was happening on the other side of the house.  *Id.* at 21 (depo. at 274).  Officer Truesdale then stated, "Open the door, come outside."  (Doc. 82-3) at 5.

While Officers Truesdale and Mariscal were trying to get the brothers to come out of the house and before one of the brothers yelled out, "We have guns," Officer White arrived at the Firehouse Road address and walked up towards the brothers' house, using his flashlight periodically.  *Id*.; (Doc. 84-2) at 4 (depo. at 116).  Officer White could also see two males walking in the front living room.  (Doc. 82-4) at 12 (depo. at 123).  In addition, Officer White heard a male from inside of the house say, "We have guns."  (Doc. 82-3) at 6. When Officer White reached the front of the house, Officer Mariscal was still in the front of the house while Officer Truesdale was already at the rear of the brothers' house.  (Doc. 82-3) at 5.

After hearing, "We have guns," Officer White took cover behind a stone wall located 50 feet from the front of the house and drew his duty weapon while Officer Mariscal took cover behind a Ford pickup truck and unholstered his duty weapon.  (Doc. 82-4) at 13 (depo. at 132); (Doc. 84-3) at 4 (depo. at 135); (Doc. 84-5) at 3 (depo. at 191); (Doc. 88-3) at 5 (depo. at 173-74).  A matter of seconds after one of the brothers yelled, "We have guns," Daniel Pauly stepped

9

partially out of the back of the house and fired two warning shots up into a tree while screaming to scare people off. (Doc. 82-1) at 17 (depo. at 224); (Doc. 82-1) at 19 (depo. at 226); (Doc. 84-5) at 6 (depo. at 209). Daniel Pauly did not feel comfortable going out the front door after he initially heard someone say that the brothers were surrounded and "come out or we're coming in." (Doc. 82-1) at 18 (depo. at 204). Having heard the two rifle shots, Officer White believed that Officer Truesdale had been shot.[8] (Doc. 84-3) at 5 (depo. at 137).

Officers Mariscal and White then saw Samuel Pauly open the front window and hold his arm out with a handgun, pointing it at Officer White.[9] (Doc. 82-4) at 3 (depo. at 185); (Doc. 82-4) at 4 (depo. at 190-91); (Doc. 82-4) at 14 (depo. at 171); (Doc. 88-4) at 3 (depo. at 193). Officer Mariscal then shot towards Samuel Pauly, but missed Samuel Pauly.[10] Four to five seconds after Samuel Pauly pointed his handgun at Officer White, Officer White shot Samuel

---

[8] Officer White claims that after he heard the first two shotgun blasts he yelled out, "State Police, hands up, hands up, hands up." (Doc. 82-5) at 13. Officer Mariscal's audio recording of the gunfire, however, does not include this statement. DVD: Mariscal, NMSP.

[9] Officers Mariscal and White assert that not only did Samuel Pauly point the handgun at Officer White, but that Samuel Pauly actually fired the handgun. (Doc. 82-4) at 4 (depo. at 190-91); (Doc. 82-4) at 14 (depo. at 171-72). A revolver later found on the living room floor under the front window where Samuel Pauly was shot had one casing forward of the firing pin while the other four chambers were loaded. (Doc. 82-5) at 21. Investigators did not recovery a bullet from the handgun, so there is no forensic proof that Samuel Pauly fired the handgun that night. *See id.* at 20. However, from Officer Truesdale's position, "[t]he first two shots were louder than the third, and the third shot was quieter then [sic] the fourth" indicating that the third shot came from the house, i.e., that Samuel Pauly fired that third shot. *Id.* at 17.

[10] Officer Mariscal strongly believes that he fired a shot at Samuel Pauly after Samuel Pauly fired the handgun. (Doc. 82-4) at 6 (depo. at 210-211); (Doc. 82-5) at 15; (Doc. 88-4) at 3 (depo. at 195). Officer Mariscal normally carries a total of 16 cartridges in his duty weapon. (Doc. 82-4) at 5 (depo. at 130-31). After the shooting, Officer Mariscal was missing one cartridge from his magazine. (Doc. 82-5) at 19. One could, therefore, infer from this evidence that Officer Mariscal fired one shot. Since only four shots were fired that night, if Officer Mariscal fired the third shot as he claims and Officer White fired the fourth shot, then Samuel Pauly could not have fired upon Officer White.

Pauly. (Doc. 84-5) at 3 (depo. at 191). The entire incident, from the time Officers Truesdale and Mariscal arrived at the Firehouse Road address to the time of the shootings, took less than five minutes. (Doc. 113) at 28.

*D. Discussion*

Officers Truesdale and Mariscal argue that they are entitled to summary judgment on the Fourth Amendment excessive force claim because their conduct was objectively reasonable under the totality of the circumstances. Officers Truesdale and Mariscal also argue that they are entitled to qualified immunity on the Fourth Amendment excessive force claim. Next, Officers Truesdale and Mariscal argue that the undisputed facts show that they did not violate Samuel Pauly's rights under article II, section 10 of the New Mexico State Constitution nor did they commit a battery on Samuel Pauly. Finally, Officers Truesdale and Mariscal argue that the NMDPS cannot be held vicariously liable for the alleged battery they committed or for their alleged violations of the New Mexico State Constitution. Plaintiffs contend that these arguments are without merit.

> *1. Count One: the Section 1983 Fourth Amendment Excessive Force Claim*
>
>> *a. Whether Officers Truesdale and Mariscal are Entitled to Summary Judgment on Count One*

Officers Truesdale and Mariscal argue first that they are entitled to summary judgment on Count One because the undisputed material facts show that their conduct at Daniel and Samuel Pauly's house was objectively reasonable under the totality of the circumstances and, therefore, lawful under the Fourth Amendment. Plaintiffs argue, however, that there are genuine issues of material fact and that when the facts are viewed in the light most favorable to Plaintiffs a reasonable jury could find that Officers Truesdale and Mariscal's conduct was reckless and unreasonably created the need for Officer White to shoot Samuel Pauly. Plaintiffs, therefore,

11

assert that a reasonable jury could find that Officers Truesdale and Mariscal's objectively unreasonable conduct violated Samuel Pauly's Fourth Amendment right to be free from excessive force. Thus, Plaintiffs contend that Officers Truesdale and Mariscal are not entitled to summary judgment on Count One.[11]

The issue in Fourth Amendment excessive force cases is whether, under the totality of the circumstances, an officer's use of force was objectively reasonable. *Thomson v. Salt Lake County*, 584 F.3d 1304, 1313 (10th Cir. 2009). Reasonableness of the use of force is judged from the viewpoint of a reasonable officer at the scene of the incident and not from hindsight. *Id*. As always, courts "recognize that officer may have 'to make split-second judgments in uncertain and dangerous circumstances.'" *Id.* (quoting *Phillips v. James*, 422 F.3d 1075, 1080 (10th Cir. 2004) (internal quotation marks omitted)).

The objective reasonableness of officers' use of deadly force further depends on "whether their 'own reckless or deliberate conduct during the seizure unreasonably created the need to use such force.' The conduct of the officers before a suspect threatens force is relevant only if it is 'immediately connected' to the threat of force." *Id*. at 1320 (citations omitted). Moreover, an officer's conduct prior to a suspect threatening force "is only actionable if it rises to the level of recklessness" or deliberateness, i.e., the officer's actions cannot constitute mere negligence. *Id*. In addition, if it was feasible for the officer to warn a suspect not to use force, the failure to issue such a warning could create an unreasonable need to use deadly force. *Id*. at 1321. Determining whether an officer's reckless or deliberate conduct unreasonably created a need to use force "is simply a specific application of the totality of the circumstances approach inherent in the Fourth

---

[11] Plaintiffs note that Officers Truesdale and Mariscal do not address Plaintiffs' Fourth Amendment claim based on Officers Truesdale and Mariscal's alleged unreasonable seizure of Samuel Pauly prior to his shooting death. The Court, however, has determined that Plaintiffs have not pled a Fourth Amendment unreasonable seizure claim. *See* (Doc. 123).

Amendment's reasonableness standard." *Id*. at 1320 (internal quotation marks omitted) (citing *Cram*, 252 F.3d at 1132).

This District Court has held that the reckless endangerment doctrine described above also applies to a non-shooting officer's conduct prior to the shooting death of a suspect by another officer. *See Diaz v. Salazar*, 924 F.Supp. 1088, 1097 (D.N.M. 1996). The Tenth Circuit Court of Appeals, however, has not applied the reckless endangerment doctrine to the conduct of non-shooting officers. Instead, in a 2013 decision, the Tenth Circuit focused on whether the non-shooting officer[12] "caused" the suspect to be deprived of his Fourth and Fourteenth Amendment rights when another officer shot and killed that suspect. *See James,* 511 Fed. Appx. at 746. The Tenth Circuit stated that "'[t]he requisite causal connection is satisfied if the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights.'" *Id.* (quoting *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006)). The Tenth Circuit further stated that to prevail on a Section 1983 claim, a plaintiff must show that the non-shooting officer's actions "were both the but-for and the proximate cause" of the suspect's death. *Id.* (citing *Trask*, 446 F.3d at 1046). However, if a superseding or intervening event, like the suspect's own actions, caused the suspect's death, then an officer cannot have proximately caused the death and the officer is, thus, not liable for that death under Section 1983. *Id*. at 747 (citing *Trask*, 446 F.3d at 1046).

Although neither Plaintiffs nor Officers Truesdale and Mariscal directly analyze Officers Truesdale and Mariscal's actions under the above causation analysis, Plaintiffs' argument concerning the reckless endangerment doctrine raises causation issues similar to those which the Tenth Circuit addressed. Plaintiffs contend, in essence, that (1) Officers Truesdale and

---

[12] In that case, the "non-shooting" officer had fired at the suspect but missed hitting him. *James v. Chavez,* 511 Fed. Appx. 742, 745 (10th Cir. 2013).

13

Mariscal's actions set in motion a series of events which they reasonably should have known would create a dangerous situation that would cause an Officer, like Officer White, to have a need to use deadly force on an occupant of the house, in this case, Samuel Pauly; and (2) Officers Truesdale and Mariscal's conduct was the but-for and proximate cause of Samuel Pauly's death. It is clearly undisputed that but for Officers Truesdale and Mariscal's decision to walk up to the brothers' house, Officer White would not have shot Samuel Pauly. The evidence of record, however, contains genuine issues of material fact regarding whether Officers Truesdale and Mariscal's conduct prior to the shooting of Samuel Pauly proximately caused Officer White's need to shoot Samuel Pauly. For example, it is disputed whether (1) Officers Truesdale, Mariscal, and White adequately identified themselves, either verbally or by using a flashlight; and (2) the brothers could, nonetheless, see Officers Truesdale, Mariscal, and White considering the ambient light and other light sources. The outcome of these factual issues is material to whether the brothers knew that State Police Officers were outside their house prior to Officer White shooting Samuel Pauly. If a jury finds that the brothers knew that State Police Officers were outside their house, but the brothers, nonetheless, armed themselves and Samuel Pauly pointed a handgun at Officer White, then a reasonable jury could find that the brothers' hostile actions were superseding or intervening causes of Samuel Pauly's death. In that scenario, Officers Truesdale and Mariscal could not be held liable for Samuel Pauly's death, i.e., Officers Truesdale and Mariscal could not have proximately caused Samuel Pauly's death. On the other hand, if a jury finds that the brothers did not know who was outside their house, then a reasonable jury could determine that Officer Truesdale and Officer Mariscal proximately caused Samuel Pauly's death by failing to adequately identify themselves as well as Officer White.

Furthermore, viewing the evidence in the light most favorable to Plaintiffs, a reasonable jury could find the following: there were no exigent circumstances requiring Officers Truesdale, Mariscal, and White to go to Daniel Pauly's house at 11:00 p.m.; Officer Truesdale and Mariscal purposefully approached the house in a surreptitious manner; despite the porch light and light from the house, the rain and darkness made it difficult for the brothers to see who was outside their house; the fact that the brothers' house is located in a rural wooded area would have heightened the brothers' concern about intruders; Officer Truesdale provided inadequate police identification by yelling out "State Police" once; the Officers' use of a hostile tone in stating, "we got you surrounded. Come out or we're coming in" was threatening; statements by Officers Truesdale and Mariscal of "open the door" and other statements of "we're coming in" were, likewise, threatening; it would have been reasonable for Officer Truesdale, Mariscal, and White to conclude that Daniel Pauly could believe that persons coming up to his house at 11:00 p.m. were connected to the road rage incident which had occurred a couple of hours previously; that under these circumstances, the occupants of the house would feel a need to defend themselves and their property with the possible use of firearms; and the incident occurred in less than five minutes. Under these circumstances, a reasonable jury could find that Officers Truesdale and Mariscal's actions set in motion a series of events which they reasonably should have known would create a dangerous situation that would cause Officer White's need to shoot Samuel Pauly. Additionally, a reasonable jury could find that but for Officers Truesdale and Mariscal's decision to walk up to the brothers' house, Officer White would not have shot Samuel Pauly. A reasonable jury could also find that Samuel Pauly's actions did not constitute a superseding cause of his death, i.e., that Samuel Pauly did not know that he was pointing a hand gun at a State Police Officer. Thus, a reasonable jury could find that Officers Truesdale and Mariscal's

conduct proximately caused Samuel Pauly's death.  In sum, a reasonable jury could find that Officers Truesdale and Mariscal's conduct caused Samuel Pauly to be deprived of his Fourth Amendment right to be free from excessive force.  Clearly, there are genuine issues of material fact which foreclose the Court from granting summary judgment on Count One.

### b. Qualified Immunity

Officers Truesdale and Mariscal also argue that they are entitled to qualified immunity on Count One.  To resolve the first part of the qualified immunity test, the Court must decide if the alleged facts, when viewed "in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a constitutional right[.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citation omitted).  As shown above, Plaintiffs have produced sufficient evidence to demonstrate that Officers Truesdale and Mariscal violated Samuel Pauly's Fourth Amendment right to be free from excessive force.  Hence, Plaintiffs meet the first step in defeating qualified immunity.

To resolve the second part of the qualified immunity test, Plaintiffs must show that Samuel Pauly's Fourth Amendment right to be free from excessive force was clearly established at the time of the shooting.  "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right.'" *Cram*, 252 F.3d at 1128 (quoting *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).  "[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  A plaintiff, however, "is not required to show

that the very conduct in question has previously been held unlawful." *Sh. A. ex rel. J. A. v. Tucumcari Mun. Schools*, 321 F.3d 1285, 1287 (10th Cir. 2003).

Since at least 2006, it has been clearly established in the Tenth Circuit that the requisite causal connection for establishing a Section 1983 violation "is satisfied if the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights." *Trask*, 446 F.3d at 1046. It has also been clearly established, since at least 2006, that for an officer to be liable under Section 1983, the officer's conduct must be both a but-for and proximate cause of the plaintiff's constitutional harm, and that a superseding cause relieves an officer of Section 1983 liability. *Id*. Accepting Plaintiffs' version of the facts, a reasonable person in Officers Truesdale and Mariscal's positions would understand that his actions would set in motion a series of events which he reasonably should have known would create a dangerous situation that would cause Officer White's need to use deadly force on Samuel Pauly. Furthermore, such a reasonable person in Officers Truesdale and Mariscal's positions would understand that his actions were both the but-for and proximate cause of Officer White's need to shoot Samuel Pauly. Accordingly, a reasonable person in Officers Truesdale and Mariscal's positions would understand that his actions violated Samuel Pauly's Fourth Amendment right to be free from excessive force. Thus, Plaintiffs meet the second step in defeating qualified immunity.

Having met the test to defeat qualified immunity, the burden shifts back to Officers Truesdale and Mariscal to prove that there is no genuine issue of material fact that would defeat the qualified immunity defense. As discussed above, genuine issues of material fact exist which concern whether Officers Truesdale and Mariscal's conduct prior to the shooting of Samuel Pauly proximately caused Officer White's need to shoot Samuel Pauly. Moreover, viewing the

facts in the light most favorable to Plaintiffs, a reasonable jury could determine that (1) Officers Truesdale and Mariscal's actions set in motion a series of events which they reasonably should have known would create a dangerous situation that would cause Officer White's need to shoot Samuel Pauly; and (2) Officers Truesdale and Mariscal's actions were the but-for and proximate cause of Officer White's need to shoot Samuel Pauly. Having failed to carry their burden of proving that there are no genuine issues of material fact that would defeat their qualified immunity defense, Officers Truesdale and Mariscal cannot claim that qualified immunity entitles them to summary judgment on Count One.

    *2. Count Four: the New Mexico State Constitution Claim*[13]

Next, Officers Truesdale and Mariscal argue that they are entitled to summary judgment on the New Mexico State Constitution claim because the undisputed material facts show that their conduct was objectively reasonable under the totality of the circumstances. Count Four, however, does not state an excessive force claim under the New Mexico State Constitution. Rather, Count Four states a New Mexico State Constitution claim for unreasonable seizure. Consequently, the Court cannot grant summary judgment on Count Four. *See Elliott Industries Ltd. Partnership v. BP America Production Co.*, 407 F.3d 1091, 1121 (10th Cir. 2005) ("Obviously, under Rule 56(a) a party cannot move for summary judgment on a nonexistent, non-pleaded claim.").

    *3. Count Three: the NMTCA Battery Claim*

Officers Truesdale and Mariscal argue that they are entitled to summary judgment on the NMTCA battery claim because the undisputed material facts demonstrate that their conduct was

---

[13] The Court will discuss Count Four before addressing Count Three because that is the order in which Officers Truesdale and Mariscal discuss those Counts in their motions for summary judgment.

objectively reasonable under the totality of the circumstances. In New Mexico, a person commits the tort of battery by "causing an offensive touching…." *Selmeczski v. N.M. Dept. of Corrections*, 2006-NMCA-024 ¶ 29, 139 N.M. 122. *See also Schear v. Board of County Com'rs of Bernalillo County*, 1984-NMSC-079 ¶ 9, 101 N.M. 671 (under NMTCA, a law enforcement officer need not inflict tort to be liable for that tort; a law enforcement officer need only proximately cause the tort). Since there are genuine questions of material fact pertaining to whether Officers Truesdale and Mariscal's actions proximately caused Officer White to use deadly force on Samuel Pauly, the Court cannot grant summary judgment on Count Three.

   *4. NMDPS Liability Pursuant to the Doctrine of Respondeat Superior*

   Lastly, Officers Truesdale and Mariscal argue that since they are entitled to summary judgment on Counts Three and Four, the NMDPS cannot be vicariously liable under the doctrine of *respondeat superior* for their alleged actions in Counts Three and Four. Having already determined that Officers Truesdale and Mariscal are not entitled to summary judgment on Counts Three and Four, the *respondeat superior* claims against the NMDPS are, likewise, not subject to summary judgment.

   IT IS ORDERED that:

   1. Defendant Kevin Truesdale's First Motion for Summary Judgment and Memorandum in Support Thereof (Doc. 90) is denied; and

   2. Defendant Michael Mariscal's First Motion for Summary Judgment and Memorandum in Support Thereof (Doc. 91) is denied.

_____<br>UNITED STATES DISTRICT JUDGE